KLEES, Judge.
This is the second appeal before us in the ongoing litigation between the State of Louisiana and various individuals who stood in line in front of the headquarters of the Department of Wildlife and Fisheries *1303 on two separate occasions to receive priority in applying for leases of state-owned property opened to oyster farming for the first time. The facts are as follows.
On May 26, 1987, in response to an announcement by the Department of Wildlife and Fisheries that it would be accepting applications for the leasing of new oyster beds on a first come, first serve basis, the original plaintiffs, Ruzica Lupis Jurisich, Nikola Lupis and Ivo Jurisich [hereinafter referred to as “Jurisich plaintiffs”] formed a line outside the Wildlife and Fisheries office in New Orleans to apply for the leases. The issuance of applications in accordance with such a line was a customary procedure, with similar lines having been maintained in 1982 and 1986. The Jurisich plaintiffs were followed in line by Ivo Zeg-ura, Dordi Slabic and Frank Bigunac [hereinafter referred to “Intervenors”].
These persons continued to maintain an orderly line for several days. Custom dictated that anyone who left the line was required to place a substitute in his stead or lose his position in line. On June 1, a dispute developed among the first six persons in line when the Jurisich plaintiffs, who held positions 1, 2, and 3, left the line at midnight and engaged three stand-ins. According to the Intervenors, who held positions 4, 5 and 6, these stand-ins then left the line for approximately an hour and a half without employing substitutes, thus abandoning their positions and allowing the Intervenors to move up three places. When the Jurisich stand-ins returned, an argument ensured between them and the Intervenors as to who held the first three positions.
This dispute was still unresolved when on June 5, 1988, the New Orleans Police Department sent Sergeant John Ruckhaber to disband the line. After doing so, Sergeant Ruckhaber made a list in his own handwriting of the persons who had been in line. The list was numbered one through six, with the first three names being those of the Jurisich plaintiffs and the second three names being those of the Intervenors. Sergeant Ruckhaber then assured the parties that officials from the State would later meet with them to resolve the issue of line formation prior to the issuance of the lease applications. Although such a meeting was held, the dispute between the Jurisich plaintiffs and the Intervenors was apparently not settled.
On July 16th, the Jurisich plaintiffs filed a petition in district court seeking a preliminary injunction preventing the State from issuing any notice regarding the acceptance of applications unless the Jurisich plaintiffs were recognized as occupying positions 1, 2 and 3. The State was the only named defendant in the suit, which also sought a permanent injunction in due course.
On July 17th, the State issued a notice that it would begin accepting lease applications at 8:30 a.m. on August 3, 1988. Immediately after the notice was issued, the line was re-formed, with two of the Inter-venors, Ivo Zegura and Dordi Slabic, arriving first. The third Intervenor, Frank Bigunac, showed up sometime later, but by his own admission did not constantly remain in line, but periodically stood in for either Zegura or Slabic. Following the In-tervenors came the three Jurisich plaintiffs and a fourth person, Jakov Jurisich. Many other persons joined the line and one of those persons, Kathy Vodopija, on her own initiative compiled a list of those standing in line and their positions, numbering 1 through 317. Aware of the dispute between the Jurisich plaintiffs and Inter-venors, Ms. Vodopija invited them to sign her list in the first six places. The Jurisich plaintiffs signed in positions 1, 2 and 3; Intervenors Zegura and Slabic refused to sign, so positions 4 and 5 were left blank, and Jakov Jurisich signed as number 6.
On July 29th, while the line was continuously being maintained, Judge Connolly held a hearing in open court on the Jurisich plaintiffs’ request for a preliminary injunction. Although the Intervenors were not yet parties to the suit, Frank Bigunac and his attorney, Richard Schambach, were present at the hearing and a letter from Ivo Zegura to the Department of Wildlife and Fisheries setting forth the Intervenors’ *1304 claim to the first three positions was proffered into the record.
On July 30th, Judge Connolly rendered a written judgment denying the Jurisich plaintiffs’ request for a preliminary injunction on the grounds that there was an adequate remedy at law for pecuniary damages. The Jurisich plaintiffs appealed to this Court. On July 31st, we reversed the district court and granted a preliminary injunction ordering the State to award the oyster leases “on a first come first serve basis in accordance with the numerical list of applicants as compiled by the New Orleans Police Department [the Ruckhaber list] ... insofar as placing petitioners in the position of 1, 2 and 3.” Jurisich v. Louisiana Department of Wildlife and Fisheries, 511 So.2d 842, 843 (La.App. 4th Cir.1987).
On the morning of August 3rd, when the Department opened its doors to hand out the lease applications, a mad rush ensued and the applications were issued with total disregard for the positions that had been maintained in line for over two weeks. That same day, Kathy Vodopija and approximately 300 persons numbering from 7 to 317 on the Vodopija list filed suit in district court seeking injunctive relief to have that list recognized by the State as the order in which the leases would be awarded after the first six places. Jakov Jurisich, number 6 on the Vodopija list, later intervened in the suit, joining in the plaintiffs’ claims against the State.
Also on August 3rd, Zegura, Slabic and Bigunac filed their petition for intervention into the Jurisich lawsuit seeking a judgment declaring that they occupied positions 1, 2 and 3, and thus enjoining the State from giving those positions to the Jurisich plaintiffs, despite this Court’s prior decision on that point. The Jurisich plaintiffs filed exceptions of no cause of action and no right of action to the intervention.
On August 21st, the Jurisich suit and the Vodopija suit were consolidated, and a hearing was held before district court Judge Louis A. DiRosa concerning the intervention in Jurisich and the exceptions thereto, as well as the merits of the Vodo-pija petition. Two judgments resulted. In the Jurisich case, Judge DiRosa dismissed the Intervenors’ claims and sustained the plaintiffs’ exceptions of no cause and no right of action. In the Vodopija case, the court issued a preliminary injunction ordering the State to grant applications for oyster leases consistent wth the order of priority established by the Vodopija list, and furthermore to recognize Intervenors Ivo Zegura and Dordi Slabic as occupying positions 4 and 5, respectively, on that list. The State was ordered to follow its own list only after the Vodopija list had been exhausted. Finally, the judgment ordered the State to give notice to all those on its own list who were not already parties of their right to intervene, and set September 16th as the deadline for such intervention. These two judgments are being appealed by Intervenors insofar as they deny Inter-venors’ claims to positions 1, 2 and 3.
On September 16th, the Intervenors substituted new counsel for Richard Scham-bach, their former counsel, and filed in the Vodopija case a petition for intervention identical to the one that had been dismissed from the Jurisich case; they also refiled their intervention in Jurisich. The intervention in Vodopija was excepted to on grounds of no cause of action, no right of action, and res judicata.
The entire matter came to trial before district Judge Gerald P. Fedoroff on September 18,1987. Although the Intervenors had been dismissed from the Jurisich proceeding, Judge Fedoroff allowed their counsel to participate fully in the trial by means of proffer. After two days of testimony, the trial judge issued a separate judgment in each of the consolidated cases, as well as written reasons for judgment. In Jurisich, the preliminary injunction was made permanent and the State was ordered to receive applications for oyster leases in the order established by the preliminary injunction, giving the Jurisich plaintiffs positions 1, 2 and 3. In Vodopija, the State was ordered to recognize Intervenors Ivo Zegura and Dordi Slabic as the holders of position 4 and 5, with Jakov Jurisich in position 6, followed by the other names in *1305 the order they appeared on the Vodopija list. In his reasons for judgment, Judge Fedoroff stated that positions 1, 2 and 3 had been determined by this Court’s earlier decision granting the preliminary injunction, and that the evidence required that positions 4 and 5 be awarded to Zegura and Slabic. Position 6 was given to Jakov Juri-sich over Intervenor Frank Bigunac because, although Bigunac was included in the first six on the Ruckhaber list, he admitted at trial that when he returned to the line in July he had neither the time nor the assistance to claim a position for himself, but only stood at times as a substitute for Zegura or Slabic. Judge Fedoroff reasoned that because “[ejveryone, including Bigunac, knew that one had to maintain his position by personal, (or substituted) ... presence until the door opened,” Bigunac had lost his position by failing to stand continuously in the second line. The position was therefore awarded to Jakov Juri-sich, who was the sixth person physically in line in July.
Intervenors Zegura, Slabic and Bigunac now appeal the two judgments issued by Judge Fedoroff on September 23, 1987 as well as the August 21, 1987 judgments issued by Judge DiRosa. They make two main arguments on appeal: (1) Judge Fedo-roff’s granting of a permanent injunction was erroneous because Intervenors were deprived of their right to a trial on the merits; and (2) Judge DiRosa’s dismissal of Intervenors’ petition was erroneous because he wrongly relied upon this Court’s prior opinion in the case in awarding the Jurisich plaintiffs position 1, 2 and 3. The appellees counter these arguments by asserting that Intervenors had their day in court when Judge Fedoroff allowed them to participate in the trial by proffer, and that Judge DiRosa’s reliance upon this Court’s opinion was proper under the “law of the case” doctrine. Additionally, appel-lees argue that Intervenors confessed judgment at the hearing before Judge DiRosa when their former counsel stated on the record that they were claiming positions four and five.
After reviewing the rather extensive record, we find that the law and the evidence, as well as principles of equity and justice, compel us to affirm the decisions of the two district court judges, both of whom did an admirable job considering the novel factual situation and many competing interests, as well as the lack of legal precedents in this matter. Under the circumstances, we find no manifest error in the judgments appealed from.
Appellants’ primary argument is that the preliminary injunction awarded to the Juri-sich plaintiffs was made permanent without a trial on the merits, in contravention of Louisiana law. This argument simply does not fit the facts of the case. The two days of testimony and evidence before Judge Fedoroff was clearly a trial on the merits of the permanent injunction. Appellants’ true complaint, then, is that they were not parties to that trial because their intervention in Jurisich had been dismissed by Judge DiRosa. By the time of the trial, appellants had refiled their intervention in Jurisich (and filed it for the first time in Vodopija) on the same grounds and were arguing that they had been wrongfully dismissed from Jurisich.
Faced with this dilemma, Judge Fedoroff stated on the record that although he believed he was bound by Judge DiRosa’s dismissal of the Intervenors in Jurisich, he was prepared to accept whatever Inter-venors had to offer by way of testimonial proffer so that the record would be complete for appellate review without the risk of remand. With regard to the Vodopija case, although he did not dismiss the intervention, Judge Fedoroff correctly stated that the Intervenors had no interest in that suit because the Vodopija plaintiffs were not claiming any of the first six positions.
The record clearly established that, although styled as a proffer, counsel for the Intervenors fully participated in the trial. Their counsel, Mr. LaDart, called his own witnesses, cross-examined opposing witnesses, and introduced documentary evidence. Although opposing counsel often objected to testimony concerning the Inter-venors’ claims to positions 1, 2 and 3, and Judge Fedoroff wavered on several occa *1306 sions, he ultimately allowed such testimony to come in. Under the circumstances, therefore, we reject appellants’ contention that they were unfairly deprived of their day in court.
Moreover, based on the evidence in the record, Judge Fedoroff’s conclusions are sound. Even disregarding our prior opinion, the preponderance of the evidence indicates that the Jurisich plaintiffs are entitled to positions 1, 2 and 3. They and their substitutes consistently maintained that they never left the line. They immediately filed suit to have their claim recognized; whereas the Intervenors, although they knew of the Jurisich proceedings, did not seek to claim positions 1, 2 and 3 until after this Court had ruled on the issue. Sergeant Ruckhaber’s affadavit indicates that his list memorialized both the names of the potential applicants and their positions in line. This statement is somewhat contradicated by Ruckhaber’s testimony at trial that he could not confirm the position held by each person, but only that the six people he listed were present. According to another witness, because Ruckhaber prepared his list after the line had been disbanded, he did so by asking those present, “Who is number 1?” The person who responded to the question then spelled his name and Ruckhaber wrote it down. This procedure was repeated for the five successive places in line. Therefore, Intervenors’ apparent acceptance of positions 4, 5 and 6 at that point in time tends to support the claim of the Jurisich plaintiffs.
Finally, there is the fact that in the hearing before Judge DiRosa on the preliminary injunction, the Intervenors’ counsel stated on the record that his clients would testify that they claimed positions 4 and 5. Although we do not necessarily accept plaintiffs’ argument that the counsel’s statement was a confession of judgment, we do consider the statement as further persuasive evidence on the issue of which parties are entitled to the first three positions. In conclusion, we find that the balance of the evidence clearly weighs in favor of awarding positions 1, 2 and 3 to the Jurisich plaintiffs, as both Judge DiRosa and Judge Fedoroff did.
This finding obviates the need of determining whether those judges correctly relied upon the “law of the case” doctrine in refusing to go against our original opinion awarding the first three positions to the Jurisich plaintiffs. Intervenors argue that this doctrine, which holds that appellate court decisions are binding upon further dispositions of the same case on remand, does not apply to them because they were' not parties to the suit at the time this Court rendered its decision. Whether or not the doctrine actually applies in this case is irrelevant in view of our finding that the preponderance of the evidence supports the Jurisich plaintiffs’ claim. Moreover, even if we were to hold that the district courts’ reliance on the doctrine was improper, considerations of equity might lead us to apply it in this case because Intervenors, although they were not parties, had actual knowledge of the proceedings. A letter from Mr. Zegura to the State was proffered into the record before Judge Connolly, who first heard the case and denied the preliminary injunction. Moreover, Mr. Bigunac testified at trial that he was present at that first hearing with his counsel, Richard Schambach, who later became Inter-venors’ counsel. Considering their involvement in the proceedings at this early stage and the expedited manner in which this matter has been handled from the outset, Intervenors could have acted to protect their claim before this Court ruled initially. Under the circumstances, it is unjust to allow Intervenors to complain now, after the leases have been awarded, that the lower courts should not have adhered to our opinion.
Finally, we must consider Mr. Bigu-nac’s alternative argument, apart from the other Intervenors, that he was wrongly denied position 6 by Judge Fedoroff. After reading Mr. Bigunac’s own testimony, we find that Judge Fedoroff acted correctly. When questioned, Mr. Bigunac stated that although he was among the first six in line in May, when he returned in July he did so as a stand-in for either Mr. Zegura or Mr. Slabic. He admitted that he did not have the time to continuously stand for himself *1307 and he was unable to procure a replacement who could do so. The testimony of another witness indicated that Mr. Bigunac did not get in line for himself until several days later, when there were at least one hundred people in line ahead of him. Nevertheless, his name does not appear on the Vodopija list. Considering this evidence, it was not manifest error for Judge Fedoroff to deny Mr. Bigunac position number 6 in favor of Jakov Jurisich, who was actually sixth in line at all times in July. We therefore affirm that decision.
Accordingly, for the reasons stated, we affirm the judgments of the district court (Judge DiRosa) dismissing appellee’s intervention on exceptions and granting a preliminary injunction ordering the Louisiana Department of Wildlife and Fisheries to award oyster leases to the Jurisich plaintiffs in position 1, 2 and 3, followed by Intervenors Zegura and Slabie in positions 4 and 5; we also affirm the judgments of the district court (Judge Fedoroff) making permanent the preliminary injunction and further ordering the State to award oyster leases to Zegura, Slabie and Jakov Jurisich in positions 4, 5 and 6, respectively, followed by the persons that appear on the Vodopija list and then on the State’s list. All costs to be borne by appellants.
AFFIRMED.